# UNITED STATES BANKRUPTCY COURT

**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

In re: **KELLY DANIELS SHEERAN,**                    **Case No. 07-70239-DHA**

                        **Debtor.**                                        **Chapter 7**

_____

## MEMORANDUM OPINION AND ORDER
_____


This matter is before the Court on the Objection to Exemptions file by Ridgely

Porter, III ("Porter" or "Creditor"). Porter claims that several of the exemptions utilized

by Kelly Daniels Sheeran ("Sheeran" or "Debtor") violate the applicable provisions of 11

U.S.C. § 522 and relevant non-bankruptcy law.  Specifically, Porter alleges that the

Debtor improperly seeks to exempt the following property for the following reasons: (1)

the "potential contingent and non-contingent interests in the estate of a decedent"

under Va. Code § 34-4, even though she does not list that specific item in her

Homestead Deed, (2) $20,908.63 under Va. Code § 34-29 in what she calls accrued

wages in violation of express provisions contained in the very code section she cites, (3)

her interest in her portion of her ex-husband's future military retirement pay pursuant

to 38 U.S.C.A. § 5301 even though that code section does not address Navy retirement

pay, and (4) $2,462.37 of her roll-over IRA account as it was improperly funded.  The

Debtor argues, for the most part, that all of her exemptions should be allowed as

recited in her schedules.[1] The Court must determine whether the Debtor's claimed

$20,908.63 are accrued wages for personal services and thus able to be exempted

pursuant to Va. Code § 34-29; whether the Debtor is allowed the exemption of her

portion of her ex-husband's future military retirement pension even though the cited

statute does not apply to such retirement pay; and whether the Debtor is entitled to

include in her claimed IRA exemption any money that was an excess deposit to which

she was not entitled.

This is a core proceeding over which this Court has jurisdiction under 28 U.S.C.

§§ 157(b)(2) and 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

After taking the matter under advisement, we make the following Findings of Fact and

Conclusions of Law.

## I. FINDINGS OF FACT

On February 8, 2007, Sheeran filed for relief under Chapter 7 of the Bankruptcy

Code ("Code") and on March 6, 2007, the Debtor filed her schedules with the Court.  In

Schedule C she claims the following items as exempt:  (1) "IRA Account with American

Funds (rolled over from 401(k) had with former firm, Carr & Porter, LLC on or about

8/25/06" pursuant to Va. Code Ann. § 34-34 valued at $57,416.24; (2) "Potential

contingent and non-contingent interest in estate of a decedent, death benefit plan, life

---

[1] As to the first objection, the Debtor acknowledges that the specific language of her exemption is not listed in her Homestead Deed and concedes, as such, that any property fitting only that description (of

insurance policy, or trust" pursuant to Va. Code Ann. § 34-4 valued at $1.00; (3) "14/26 of 50% of former husband's retirement to be received upon retirement from United States Navy" pursuant to 38 U.S.C.A. § 5301(a) valued at $1.00; and (4) 75% of "[e]stimate (gross, not net) of wages earned and accrued but not paid because of limited cash flow of Kelly  Daniels Sheeran Law Firm, P.C.  Estimate based on fair market value of services calculated at a base compensation of $80,000 per year," pursuant to Va. Code Ann. § 34-29 valued at $20,908.63 and pursuant to Va. Code Ann. § 34-4 valued at $2,429.97.

Porter filed the instant objection on April 12, 2007, to which the Debtor filed a written response on May 7, 2007.  A hearing on the objection was held on May 29, 2007, during which the Debtor was the only witness.

At the hearing Sheeran testified that she is the debtor in the instant case, that she had a prior marriage and divorce, but could not provide the exact date of said divorce.  She testified that she believed the divorce was final in 1999, and that there was an equitable distribution of property as a result of the divorce through which she obtained an interest in her former husband's future Navy retirement. She testified that her ex-husband plans to retire from the service in the near future, perhaps during the summer of 2007; this information was provided to her by her children whom she had with her ex-husband.  She also testified that her ex-husband graduated from the United

---

which there is currently none) would not be exempt.  Consequently, this exemption will not be addressed until the Conclusion of this Memorandum Opinion and Order.  See *infra* p. 28.

States Naval Academy in 1977, was commissioned as an officer in that same year, and currently holds the rank of Captain.

Regarding her law firm, Sheeran testified that she is the sole owner of Kelly Daniels Sheeran Law Firm, P.C. ("KDS"), which is a Subchapter S corporation that she began in September 2006.  She testified that she is the only attorney and only employee of KDS.  She testified that KDS does pay two independent contractors, Sharon Barker, a paralegal, and Anthony Smith, a title examiner, for services to her and her firm.  Sheeran testified that KDS currently has two clients, the Virginia Department of Transportation ("VDOT") and an Estate for which KDS acts as the administrator. When asked the amount she bills VDOT for the services of Ms. Barker and Mr. Smith, Sheeran testified that VDOT sets the rates for both, $50 per hour for paralegal services and $300 per title exam.  She stated that she pays Mr. Smith 60% of the fees paid to her by VDOT and that she believed she paid Ms. Barker $30 per hour.

When asked how much money she paid to Barker in November 2006, Sheeran testified that according to her Towne Bank records[2] for that month, two checks, each for $1,000, were written to Barker for her paralegal services, but noted that Barker could have been paid more as she sometimes requested to be paid in cash.  She testified that she could answer the question specifically by consulting her completed Internal Revenue Service 1099s on Barker and Sheeran's ledger documenting all of

---

[2] KDS' Towne Bank statements for the months of September 2006, through March 2007, were admitted into evidence during the May 29, 2007 hearing.

Barker's hours worked and compensation paid each year.[3]  Similarly, Sheeran testified

that according to her bank records alone, Barker was paid another $2,000 in December

2006, and again in January 2007.

Sheeran testified that according to those same bank statements, deposits

totaling $4,735.33, $5,761.18, and $747.70 were made in the months of November

2006, December 2006, and January 2007, respectively.  She stated that almost all of

these deposits represented payments from VDOT.  She explained that there was no

standard "turn-around time" for VDOT payments for various reasons.  For example, she

stated that she was not allowed to bill VDOT until her charges reached $1,000 and that

payment could be delayed for several months depending on the specific project and

whether it had been funded.

As for her own salary, Sheeran testified that she did not actually set her annual

salary figure of $78,000 to $80,000 until January 2007, when it was necessary to do so

for income tax purposes.  She explained that when she began the firm in September

2006, she did not take a salary initially because the firm was new and she was afraid

that she would not be able to pay all her expenses.  She testified that to cover her

personal expenses she made draws from the business, of which she kept track, but was

not paying herself a salary *per se*.  She testified that the annual salary she set for

herself in January 2007, breaks down to approximately $1,500 per week, but that she

---

[3] Sheeran did not have these records with her at the hearing as she had not been requested to bring them and further, no request was made during the hearing for their production.

had not actually been drawing that much money.  She emphasized that the $78,000 to $80,000 figure was an estimate.

Sheeran testified that she could not fairly estimate how many hours she billed in September 2006, but when asked if she recalled stating during a deposition that she was working between four and five hours per day she stated that those numbers sounded like a good estimate of her working hours.

Finally, Sheeran acknowledged that she received a letter dated February 6, 2007, which was sent to her as a principal of her former law firm, Carr & Porter, L.L.C.  The letter states that $2,462.37 in matching funds were erroneously paid into Sheeran's 401(k) account due to a partnership loss, which disqualified her 2006 income for 401(k) deferrals for that year. The letter further states that this amount is not eligible for rollover and that the rollover institution handling these funds should return that amount to Sheeran by March 15, 2007.

The Debtor did not present any evidence at the hearing, but rather after the completion of Porter's case, moved for Judgment on Partial Findings as to all of Porter's objections claiming that he did not meet his burden of proof as to any of them.


## II.  ARGUMENTS

Porter objects to the debtor's exemption for compensation on two grounds: 1) the debtor is improperly exempting profits as wages for personal services and 2) the

debtor improperly established a salary for herself just before filing bankruptcy and is

applying it retroactively to the detriment of the unsecured creditors.

To support his first argument Porter cites the case of *Robert Walter Smith v.*

*Robert W. Smith, et al.*, 32 Va. App. 242 (Ct. App. Va. 2000), for the proposition that

profit from a business may not be claimed as wages because exemptible compensation

must be paid for personal service rather than as a return on investment.  Porter argues

that the debtor is attempting to exempt the profit she made off of her investment in

KDS rather than compensation for her own personal services.  For example, Porter

argues that Sheeran was billing VDOT at a profit of $20 per hour for the services of her

paralegal and at a 40%  profit for the work of her title examiner and should not be

allowed to exempt those funds.

Porter also states that Sheeran waited until just before she filed for bankruptcy

to set a salary for herself and is attempting to apply it retroactively, which he argues is

improper as it allows the debtor to pick any figure she desires and file a claim in that

amount, thereby reducing the money paid to the unsecured creditors.

To this, and all the other objections, the debtor argues that they should be

overruled as Porter has failed to meet his burden of proof.

As to the wage exemption objection specifically, the debtor argues that pursuant

to Va. Code § 34-29 she is allowed an exemption of 75% of her earned, but as yet

unpaid, wages since the inception of KDS in September 2006, an amount she estimates

to be $20,908.63.  She states that there is no requirement in the Virginia Code that in

order for income to qualify for this exemption that it must be calculated at the time it is earned; rather, § 34-29 states that as long as the earnings are for personal services their denomination (*i.e.*, wages, salary, commission, bonus) is of no consequence. The debtor argues that the amount she is claiming as exempt were for personal services as she is the only attorney in KDS, thus the only person capable of generating the legal work for which the clients paid. She states that the broad definition assigned to "earnings" clearly encompasses wages earned but not specifically delineated at the time they were earned, such as the ones here. Finally, she points out that the argument over this issue is moot as there is no money with which to pay her.

For his objection to the debtor's exemption of her interest in her former husband's future Navy retirement pay, Porter argues that because the debtor cited the wrong code section to claim the exemption that it should not be allowed. Porter points out that the debtor cited 38 U.S.C.A. § 5301 as authority for claiming the exemption, but that that code section does not include an exemption for Navy retirement pay; therefore, the debtor should be precluded from exempting her interest in such pay.

The debtor concedes that the cited code section does not include an exemption for Navy retirement pay; however, she argues that this is of no consequence because her interest in such pay never became part of the bankruptcy estate and thus does not need to be exempted. She explains that she included the exemption out of an abundance of caution.

Finally, as to the debtor's IRA exemption, which was rolled over from a 401(k) account the debtor had with her former law firm, Carr & Porter, L.L.C., Porter argues that because the 401(k) account was improperly over funded by $2,462.37, that amount should not be exempt.

The debtor argues that the debtor's IRA is the equivalent of a 401(k) account and is therefore out of the reach of creditors; as such, the debtor is entitled to the exemption.

## III. CONCLUSIONS OF LAW

Section 541 of the Bankruptcy Code defines what property of the debtor becomes property of the estate upon the filing of the bankruptcy petition. 11 U.S.C. § 541 (2006). That section states that "[e]xcept as provided in subsections (b) and (c)(2) of this section" property of the estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case." *Id.* at § 541(a)(1).[4]

---

[4] Section 541 of the Code reads:

§ 541. Property of the estate

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
  (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
  (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is--
    (A) under the sole, equal, or joint management and control of the debtor; or
    (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.
  (3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

Subsection (b) of § 541 sets apart property that is not part of the estate

and specifically includes educational IRAs and employee benefit plans subject to the

Employee Retirement Income Security Act of 1974 ("ERISA").  *Id.* at § 541(b)(5) & (7).[5]

---

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date--

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a).
[5]  Subsection (b) of § 541 reads in its entirety:

(b) Property of the estate does not include--

(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;

(2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case;

(3) any eligibility of the debtor to participate in programs authorized under the Higher Education Act of 1965 (20 U.S.C. 1001 et seq.; 42 U.S.C. 2751 et seq.), or any accreditation status or State licensure of the debtor as an educational institution;

(4) any interest of the debtor in liquid or gaseous hydrocarbons to the extent that--

(A) (i) the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement; and

(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 544(a)(3) of this title; or

(B) (i) the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred; and

(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 542 of this title;

(5) funds placed in an education individual retirement account (as defined in section

530(b)(1) of the Internal Revenue Code of 1986) not later than 365 days before the date of the filing of the petition in a case under this title, but--

(A) only if the designated beneficiary of such account was a child, stepchild, grandchild, or stepgrandchild of the debtor for the taxable year for which funds were placed in such account;

(B) only to the extent that such funds--

(i) are not pledged or promised to any entity in connection with any extension of credit; and

(ii) are not excess contributions (as described in section 4973(e) of the Internal Revenue Code of 1986); and

(C) in the case of funds placed in all such accounts having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $ 5,475;

(6) funds used to purchase a tuition credit or certificate or contributed to an account in accordance with section 529(b)(1)(A) of the Internal Revenue Code of 1986  under a qualified State tuition program (as defined in section 529(b)(1) of such Code) not later than 365 days before the date of the filing of the petition in a case under this title, but--

(A) only if the designated beneficiary of the amounts paid or contributed to such tuition program was a child, stepchild, grandchild, or stepgrandchild of the debtor for the taxable year for which funds were paid or contributed;

(B) with respect to the aggregate amount paid or contributed to such program having the same designated beneficiary, only so much of such amount as does not exceed the total contributions permitted under section 529(b)(7) of such Code with respect to such beneficiary, as adjusted beginning on the date of the filing of the petition in a case under this title by the annual increase or decrease (rounded to the nearest tenth of 1 percent) in the education expenditure category of the Consumer Price Index prepared by the Department of Labor; and

(C) in the case of funds paid or contributed to such program having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $ 5,475;

(7) any amount--

(A) withheld by an employer from the wages of employees for payment as contributions--

(i) to--

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974  or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986; except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2); or

(ii) to a health insurance plan regulated by State law whether or not subject to such title; or

(B) received by an employer from employees for payment as contributions--

(i) to--

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974  or under an employee benefit plan which is a governmental

Subsection (c)(2) of § 541 excludes from the estate any "beneficial interest of the debtor in a trust" that includes "a restriction on transfer...that is enforceable under applicable nonbankruptcy law...." *Id.* at § 541(c)(2). This exemption has been found to apply only to spendthrift trusts. *In re Avis*, No. 95-12007-AM, 1996 Bankr. Lexis 1948, *1, *19-*20 (Bankr. E.D. Va. Mar. 12, 1996), *In re Hersch*, 57 B.R. 667, 668 (Bankr. E.D. Va. 1986).

---

plan under section 414(d) of the Internal Revenue Code of 1986;
        (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
        (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
        except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2); or
        (ii) to a health insurance plan regulated by State law whether or not subject to such title;
    (8) subject to subchapter III of chapter 5, any interest of the debtor in property where the debtor pledged or sold tangible personal property (other than securities or written or printed evidences of indebtedness or title) as collateral for a loan or advance of money given by a person licensed under law to make such loans or advances, where--
        (A) the tangible personal property is in the possession of the pledgee or transferee;
        (B) the debtor has no obligation to repay the money, redeem the collateral, or buy back the property at a stipulated price; and
        (C) neither the debtor nor the trustee have exercised any right to redeem provided under the contract or State law, in a timely manner as provided under State law and section 108(b); or
    (9) any interest in cash or cash equivalents that constitute proceeds of a sale by the debtor of a money order that is made--
        (A) on or after the date that is 14 days prior to the date on which the petition is filed; and
        (B) under an agreement with a money order issuer that prohibits the commingling of such proceeds with property of the debtor (notwithstanding that, contrary to the agreement, the proceeds may have been commingled with property of the debtor), unless the money order issuer had not taken action, prior to the filing of the petition, to require compliance with the prohibition.

Paragraph (4) shall not be construed to exclude from the estate any consideration the debtor retains, receives, or is entitled to receive for transferring an interest in liquid or gaseous hydrocarbons pursuant to a farmout agreement.
11 U.S.C. § 541(b).

Additionally, debtors are entitled to exempt from inclusion in the bankruptcy estate certain property listed in § 522(d) of the Code or in the applicable state law statutes if their state has chosen to opt out of the federal exemptions as authorized by § 522(b)(1). *Id.* at §§ 541(b)(3)(A). Virginia has chosen to opt out of the federal exemptions. Va. Code Ann. § 34-3.1 (2005). Therefore, Virginia residents filing bankruptcy may utilize only the exemptions set forth in Title 34 of the Virginia Code to preserve property during their bankruptcy case. *Id.*

The Federal Rules of Bankruptcy Procedure requires that the objecting party prove that the claimed exemptions are not valid. Fed. R. Bankr. P. 4003(c); *see also In re Hurst*, 239 B.R. 89, 92 (Bankr. D. Md. 1999), *In re Hanes*, 162 B.R. 733, 736 (Bankr. E.D. Va. 1994). Therefore, Porter must do so by a preponderance of the evidence. *In re McWhorter*, No: 05-03135, 2006 Bankr. Lexis 722, *1, *8 (Bankr. D.S.C. 2006), *Hanes*, 162 B.R. at 736.

A. Debtor's Accrued Wages

Virginia Code § 34-29(a) allows a debtor to exempt a percentage of her earnings from creditor process. Va. Code Ann. § 34-29. Garnishment may not exceed the lesser of 25% of the debtor's weekly disposable earnings or "the amount by which [her] disposable earnings for that week exceed 40 times the federal minimum hourly wage." *Id.* at §§ 34-29(a)(1) & (2).[6] Earnings, in relevant part, are defined as "compensation paid or payable for personal services, whether denominated as wages, salary,

commission, bonus, payments to an independent contractor, or otherwise...." *Id.* at §

34-29(d)(1). The term "personal services" is not defined in the Virginia Code, but one

court in the Fourth Circuit has defined it as "'an economic service involving either the

intellectual or manual personal effort of an individual, as opposed to the salable product

of the person's skill.'" *In re Dillon*, No. 05-10428C-7D, 2005 Bankr. Lexis 1214, *1, *10

(Bankr. M.D.N.C. July 8, 2005) (quoting *Black's Law Dictionary* 1180 (8th ed. 2004).[7]

"[L]ongstanding Virginia precedent establishes that exemption statutes are to be

construed liberally." *Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977, 981 (4th Cir.

1984).  However, such "'liberal construction...does not authorize the courts to reduce or

enlarge the exemption, or to read into the exemption laws an exception not found

there.'" *Hanes*, 162 B.R. at 738 (quoting *Tignor*, 729 F.2d at 981).

In the instant case, the debtor has claimed an exemption in $20,908.63,

representing what she states is 75% of her wages earned, but unpaid.

Porter claims that not all of this amount is for personal services rendered by the

debtor as required by Va. Code § 34-29(d)(1) in order to be exempt, but is rather

profit, which he claims as a strict rule is not exemptible according to the holding in

*Robert Walter Smith v. Robert W. Smith, et al.*, 32 Va. App. 242, 255, 527 S.E.2d 463,

---

[6] The debtor has exempted 75% of her income and no one has objected to this choice as not be ing the lesser of the two options.
[7] It is important to note that North Carolina has also opted out of the federal exemptions allowed under the Code and that "'[e]arnings...for personal services' is also not defined in N.C. Gen. Stat. § 1-362." *Dillon*, 2005 Bankr. Lexis 1314 at *4.

470 (Va. Ct. App. 2000).[8]  We disagree as we find Porter's reliance on the *Smith* case

misplaced as it and the case at hand are so dissimilar and thus distinguishable.

　　　The court in *Smith* held that the definition of earnings in the Virginia Workers'

Compensation Act does not include profits from a business for the purposes of

determining a claimant's *loss of income* in a worker's compensation claim.  *Id.* at 255-

56 (emphasis added).  In that case, the claimant owned and operated a construction

company with 5 employees, from which he earned income in two ways from his jobs;

*i.e.*, wages from his actual hourly work and commissions on those same jobs. *Id.* at

246.  He was injured on the job, after which he was totally disabled for approximately 3

months and partially disabled for another 5 months. *Id.*   He applied for lost wages

benefits through his company's workers' compensation insurance coverage for those

time periods, but continued to take draws from the business based strictly on profit

earned while he was not working. *Id.* at 246-47.   The Workers' Compensation

Commission ruled that the claimant was not entitled to any lost wages benefit because

his income reported on his federal taxes for the year he was injured was more than the

income reported the previous year. *Id.* at 250.  The *Smith* court ruled that the

Commission erred because it did not distinguish between wages and profit when

determining the claimant's entitlement to the lost wages benefit he was seeking.  *Id.* at

252-53.  That determination is something wholly different from what the debtor is

trying to do in this case.  The *Smith* court began its analysis with the general rule

---

[8] Porter never states how much of the debtor's claimed wages he believes to be profit.

"'profits derived from a business are not to be considered as earnings and cannot be accepted as a measure of loss of earning power *unless* they are almost entirely the direct result of [the claimant's] personal management and endeavor.'" *Id.* at 253 (quoting *The Washington Post v. District of Columbia Dep't of Employee Servs.*, 675 A.2d 37, 42 (D.C. 1996)(emphasis added)).  "'The conduct of a sole proprietorship [may be scrutinized] to determine if the profits are the functional equivalent of wages." *Id.* at 253; *see also Pishotta v. Pishotta Tile & Marble, Inc.*, 613 So. 2d 1373, 1375-76 (Fla. Ct. App. 1993) (holding that corporate profits may be considered personal earnings of sole shareholder to extent they are fairly attributable to management and/or labor of sole shareholder rather than labor of others or mere return on capital), *Oberley v. Oberley Eng'g, Inc.*, 940 S.W.2d 953, 956 n.3 (Mo. Ct. App. 1997) (holding that where revenue was generated from professional accounting services of its sole shareholder *or from personal services performed under him*, funds generated by the business which shareholder withdrew to pay personal expenses, although not denominated "wages" for purposes of bookkeeping, could be considered wages for purposes of calculating pre-injury wage), *Thompson v. Harold Thompson Trucking*, 12 Kan. App. 2d 449, 748 P.2d 430, 437-38 (Kan. Ct. App. 1987) (holding that where sole proprietor did not receive a salary, his draw for payment of personal expenses could be used to calculate his pre-injury average weekly wage).  So while the *Smith* court ultimately found that in order to determine a benefit to compensate for not working, we must look to the actual money

made from personal services and there is no justification for extrapolating the *Smith* holding to the facts of our case.

More informative to the Court on this issue are cases that actually involve the determination of "personal services" pay under exemption law.  Unfortunately, the Court has been unable to find any cases that reveal exactly what "personal services" pay is, but we did find several that stated very clearly what it is not.  Three courts have determined that disability payments are not considered earnings for personal services. *Dillon*, 2005 Bankr. Lexis 1314 at *12-*13, *Stinnett v. LaPlante (In re Stinnett)*, 321 B.R. 477, 482 (S.D. Ind. 2005), *Elmwood v. Elmwood*, 395 N.C. 168, 244 S.E.2d 668, 675 (N.C. 1978).  The Fourth Circuit has even weighed in on one type of payment that does not tow the line for "personal services."  *In re Andrews*, 80 F.3d 906 (4th Cir. 1996).  There the court held that payments to a debtor as a result of a non-competition agreement do not constitute earnings from personal services under the federal exemptions.  *Id.* at 912.  It strikes this Court that what these cases have in common are monies paid to people for *not* working rather for personal services performed.  *See Dillon*, 2005 Bankr. Lexis 1314, at *10-*12 (specifically not following a North Carolina Court of Appeals case, *Jacobi-Lewis Co. v. Charco Enters.*, 121 N.C. App. 500, 466 S.E.2d 338 (N.C. Ct. App. 1996) in which the court found that rental income was compensation for personal services performed, as the *Dillon* court found it was inconsistent with North Carolina Supreme Court precedent and that the ruling "articulate[d] no plausible theory for equating" the two).   Indeed, it would turn the

meaning of the phrase "earnings for personal services" inside out to include such

payments in its definition.  But, alas, these are not the facts before the Court in the

case at hand.

Here, the debtor is the sole attorney in KDS.  She performs work for two clients

and employs the services of a paralegal and a title examiner to assist her in the

completion of her duties.  All or almost all of the money the debtor has received since

September 2006, has been from VDOT and she bills VDOT $20 more per hour than she

pays to her paralegal and 40% above what she pays her contractor for title exams.

The evidence also showed that during September 2006, the debtor was working 4-5

hours per day.  That is the total evidence before the Court regarding the work

performed by the debtor from September 2006, to the date of filing.  Without more

information the Court is unable to find that Porter met his burden of proof on this point.

In order to find for Porter the Court would have to assume not only that there

were no expenses associated with the contracting of the paralegal and the title

examiner, but also that the debtor did no work to earn the difference between the

amount the debtor was paid by VDOT and the amount she paid to her two contractors.

The burden of proof is on Porter's shoulders and the Court refuses to make any such

assumptions.  The Court notes that the Rules of Professional Conduct for Virginia, which

prescribes appropriate behavior for all licensed lawyers in the Commonwealth, requires

lawyers to be responsible for nonlawyers in their employ.  Rules of Prof'l Conduct R. 5.3

(2000).  An attorney, such as the debtor, cannot assign work to a nonlawyer and upon

its completion merely deliver it to the client without first taking steps to ensure its legal

accuracy, completeness and professionalism.  The legal field is highly specialized and

strictly licensed and monitored; as such, it requires the debtor to employ her personal

intellectual efforts to ensure that all work produced by KDS meets a minimum standard.

Taking all of this together, we find that we do not have the evidence before us to find

that the debtor did not perform personal services for the amount she is claiming as

income.  Porter has not met his burden of proof and the objection is over ruled on this

point.  We believe this ruling comports with the rule that exemptions are to be liberally

construed and that it does not modify the exemption in any way. *See Hanes*, 162 B.R.

at 738.

Secondly, Porter argues that the debtor did not set her salary until just before

filing for bankruptcy and that she should be barred from applying that salary

retroactively in order to claim this exemption.  He does not cite any case law for this

assertion and the Court is unable to find any law by any court on this issue.  We are left

then to the plain language of the statute to interpret its meaning.  *See United States v.*

*Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989), *Patterson v. Shumate*, 505 U.S. 753,

757-58 (1992), *Hanes*, 162 B.R. at 737.

Section 34-29(d)(1) of the Va. Code states:

> The term *'earnings'* means compensation paid or payable for personal
> services, whether denominated as wages, salary, commission, bonus,
> payments to an independent contractor, or otherwise, whether paid
> directly to the individual or deposited with another entity or person on

> behalf of and traceable to the individual, and includes periodic payments
> pursuant to a pension or retirement program.

Va. Code Ann. § 34-29(d)(1).  The only requirement to claim this exemption is that the

pay be for personal services of the debtor; there is no statement that the amount of

wages be specified in advance of earning them.  As stated above, it has not been

proven that the debtor did not perform personal services for the wages she is

exempting, so unless one of the exceptions to the Plain Meaning Rule applies then

Porter's objection must fail on this point as well.

Porter argues from a policy standpoint that allowing the debtors to set their

salary amount just before filing bankruptcy and apply it retroactively gives them a blank

check with which to rob the unsecured creditors.  The Court is not persuaded by this

argument.  Creditors, case trustees, the United States Trustee and, ultimately, the

Court, if necessary, scrutinize all of the debtor's filings to guard against such behaviors.

Debtors have to substantiate the information they put in their schedules, statements

and other filings and the Court is shrewd enough to determine when someone is

manipulating the Code, Rules, or the system.  Here, it is not unreasonable to believe

that in a period of five months 75% of the debtor's salary would equal a little over

$20,000 and Porter has not proven otherwise.  The Court finds that Porter has not met

his burden of proof on this point either; therefore, the objection to the exemption for

wages must be overruled.[9]

---

[9] The Court notes that the debtor points out that this entire discussion is academic as there is no asset
with which to pay her the back wages.

B. Debtor's Interest in her Former Husband's Future Navy Retirement Pay

This Court has previously held that a Chapter 7 debtor's interest in an ex-spouse's *future* military retirement is not part of the bankruptcy estate. *Stackhouse v. Kotz (In re Kotz)*, 146 B.R. 669, 670 (Bankr. E.D. Va. 1992); *see also Armstrong v. United States (In re Greiner),* 49 Bankr. 393 (Bankr. D.N.D. 1985) (holding that Coast Guard pension benefits are not property of the estate); *In re Siverling,* 72 Bankr. 78 (Bankr. W.D. Mo. 1987) (same result, Army retirement pay); *but see In re Robinson,* 39 Bankr. 47 (Bankr. E.D. Va. 1984) (holding that military retirement pay is property of the estate in a Chapter 13 case). The relevant facts in *Kotz* are identical to those in the underlying case; the Chapter 7 trustee filed an adversary proceeding for the turnover of the debtor's interest in her ex-husband's future military retirement pay, which she had not listed among her assets as she believed such interest was not property of the estate.

The *Kotz* court's decision that the future pay was not part of the estate hinged on the distinction between the debtor's right to payment and the actual payments themselves. *Id.* at 671. Judge Tice noted that "[a]ny rights the debtor may have in [her ex-husband's] military retirement pay do no vest until payments are actually received by him." *Id.* at 670. The Court, relying on decisions from the Seventh Circuit, explained that the debtor was not entitled to any payments until her ex-husband actually received them, which was conditioned upon "his being alive on the first day of each month." *Kotz*, 146 B.R. at 671 (citing *Matter of Haynes*, 9 B.R. 418, 419 (Bankr.

N.D. Ind. 1981), aff'd, 679 F.2d 718 (7th Cir. 1982), cert. denied, sub nom. *Miller v.*

*Haynes*, 459 U.S. 970 (1982); *Matter of Harter*, 10 B.R. 272 (Bankr. N.D. Ind. 1981)).

The *Kotz* court further found:

> Since the debtor may not enforce her right immediately, her present
> entitlement is of no value to the estate. Likewise, the future payments are
> not property in which the debtor has an interest under § 541 of the
> Bankruptcy Code.
>
> Further, even if the court were to find that the payments constitute
> property of the estate, the trustee's proposal to collect these payments
> until such time as creditors are paid in full is both impractical and
> inconsistent with the policy of the Bankruptcy Code. As Judge Rodibaugh
> reasoned in *Harter,* allowing the trustee to force the debtor into a "quasi-
> Chapter 13" by collecting future payments to achieve full payment of
> debts violates the debtor's exclusive right under 11 U.S.C. § 706 to
> convert a chapter 7 case to one under chapter 13. Chapter 7 affords the
> debtor the opportunity for a speedy fresh start in exchange for immediate
> liquidation of all current assets. While chapter 7 creditors rarely receive
> full payment they receive payment quickly. This contrasts greatly to cases
> under chapter 13 where the debtor is allowed to remain in possession of
> current assets but must undertake an extended repayment obligation. As
> stated by Judge Rodibaugh:
>
> The trustee herein proposes a hybrid liquidation with forced 100%
> repayment while the debtor suffers all the disadvantages of Chapter 7
> (loss of one's property with the attendant stigma attached) and forgoes
> the advantages of Chapter 13 (comparatively liberal discharge provisions,
> and the ability to retain one's possessions).

*Kotz*, 146 B.R. at 671 (citations omitted).

The Court here finds most persuasive the very real distinction drawn between

the right to payment and the payment itself.  In the instant case, just as in *Kotz*, the

debtor currently possesses only a right to future payments from her ex-husband's

military retirement pay.  The debtor's right to payment is contingent upon many factors

and will not vest until the debtor actually begins receiving payments upon retirement.

Several intervening events could forestall or forego the right ever vesting.  For example,

the debtor's ex-husband could decide to remain in the military for any length of time in

which case her receipt of any retirement funds would be postponed, or he could pass

away prior to retiring, which would terminate the debtor's right to any payment at all.

We find that the debtor's right to receive a percentage of her ex-husband's military

retirement did not become part of the estate and as such did not need to be exempted

by the debtor.  Therefore, Porter's objection to this exemption is overruled.

C. Debtor's IRA

Funds transferred from an ERISA-qualified plan to an IRA are not protected from

creditor process and thus become part of the bankruptcy estate.  *Phillips v. Bottoms*,

260 B.R. 393, 396 (E.D. Va. 2000) (citing *In re Ekanger*, 1999 Bankr. Lexis 1858, No-

99-10571, 1999 WL 671866, *2 (Bankr. E.D. Va. May 17, 1999)); *see Tenneco, Inc. v.*

*First Virginia Bank*, 698 F.2d 688, 691 (4th Cir. 1983) (holding that funds drawn from

an ERISA-qualified plan are not "forever immune from attachment by creditors"),

*Johnston v. Mayer (In re Johnston)*, 218 B.R. 813, 817 (Bankr. E.D. Va. 1998) (holding

that funds disbursed from an ERISA-qualified account were no longer completely

exempt from the bankruptcy estate and had to be rolled over into an IRA, where they

would then be subject to state exemption law).  However, Virginia allows an exemption

of a portion of debtors' IRAs depending on their age when the exemption is claimed.

Va. Code Ann. § 34-34.[10]

---

[10] The pertinent language of § 34-34 reads:

> B. The interest of an individual under a retirement plan shall be exempt from creditor process to the extent provided under this section. The exemption provided by this section shall be available whether such individual has an interest in the retirement plan as a participant, beneficiary, contingent annuitant, alternate payee, or otherwise.

> C. The exemption provided under subsection B shall not apply to the extent that the interest of the individual in the retirement plan would provide an annual benefit in excess of $25,000. If an individual has an interest in more than one retirement plan, the limitation of this subsection C shall be applied as if all such retirement plans constituted a single plan. The amount required to provide an annual benefit of $25,000 shall be determined under the following table:

| Attained Age When Exemption Claimed | Cost of $ 1 of Annual Benefit |
|---|---|
| 16 | 0.1482 |
| 17 | 0.1603 |
| 18 | 0.1734 |
| 19 | 0.1875 |
| 20 | 0.2028 |
| 21 | 0.2193 |
| 22 | 0.2371 |
| 23 | 0.2564 |
| 24 | 0.2773 |
| 25 | 0.2998 |
| 26 | 0.3241 |
| 27 | 0.3505 |
| 28 | 0.3789 |
| 29 | 0.4096 |
| 30 | 0.4429 |
| 31 | 0.4789 |
| 32 | 0.5178 |
| 33 | 0.5598 |
| 34 | 0.6054 |
| 35 | 0.6546 |
| 36 | 0.7080 |
| 37 | 0.7658 |
| 38 | 0.8284 |
| 39 | 0.8963 |
| 40 | 0.9699 |
| 41 | 1.0497 |
| 42 | 1.1363 |

| | |
|---|---|
| 43 | 1.2304 |
| 44 | 1.3326 |
| 45 | 1.4436 |
| 46 | 1.5645 |
| 47 | 1.6960 |
| 48 | 1.8394 |
| 49 | 1.9958 |
| 50 | 2.1665 |
| 51 | 2.3530 |
| 52 | 2.5571 |
| 53 | 2.7808 |
| 54 | 3.0260 |
| 55 | 3.2954 |
| 56 | 3.5915 |
| 57 | 3.9175 |
| 58 | 4.2771 |
| 59 | 4.6748 |
| 60 | 5.1150 |
| 61 | 5.6035 |
| 62 | 6.1472 |
| 63 | 6.7538 |
| 64 | 7.4330 |
| 65 | 8.1958 |
| 66 | 7.9989 |
| 67 | 7.8007 |
| 68 | 7.6009 |
| 69 | 7.3985 |
| 70 | 7.1924 |
| 71 | 6.9830 |
| 72 | 6.7706 |
| 73 | 6.5556 |
| 74 | 6.3393 |
| 75 | 6.1222 |
| 76 | 5.9054 |
| 77 | 5.6897 |
| 78 | 5.4763 |
| 79 | 5.2638 |
| 80 | 5.0529 |
| 81 | 4.8447 |
| 82 | 4.6403 |
| 83 | 4.4395 |
| 84 | 4.2415 |
| 85 | 4.0456 |
| 86 | 3.8522 |
| 87 | 3.6616 |
| 88 | 3.4742 |
| 89 | 3.2904 |
| 90 | 3.1106 |

In the instant case, prior to filing bankruptcy the debtor rolled over her 401(k)

pension from her former employer into an IRA, which means, according to the law

announced in *Phillips*, those funds are part of the bankruptcy estate.  However, the

debtor is able to exempt a portion of her IRA based on the formulation found in Va.

Code § 34-34.  In her schedules the debtor lists the total value of her IRA as

$57,416.24 and claims the entire amount exempt under the statute.[11]  At the hearing

the evidence showed that sometime after filing her bankruptcy petition the debtor

received the letter stating that her 401(k) account had been improperly over funded by

$2,462.37 due to a loss she sustained in her business partnership in 2006.  Porter

| | |
|---|---|
| 91 | 2.9354 |
| 92 | 2.7653 |
| 93 | 2.6011 |
| 94 | 2.4415 |
| 95 | 2.2867 |
| 96 | 2.1367 |
| 97 | 1.9935 |
| 98 | 1.8558 |
| 99 | 1.7214 |
| 100 | 1.5972 |
| 101 | 1.4755 |
| 102 | 1.3478 |
| 103 | 1.2690 |
| 104 | 1.1738 |
| 105 | 1.0679 |
| 106 | 0.7517 |
| 107 | 0.0000 |
| 108 | 0.0000 |
| 109 | 0.0000 |
| 110 | 0.0000 |

For example, the amount required to provide an annual benefit of $25,000 to an
individual who attained age 60 at the time the exemption provided by this section is
claimed is $127,875 ($25,000 times 5.1150).

Va. Code Ann. §§ 34-34(B) & (C).

[11] No argument has been made that the debtor is not entitled to a full exemption based on her age.

argues that this over payment may not be exempted from the estate as it can not be

included in her IRA at all.  He does not cite any legal grounds for this objection and the

Court is unable to find any law directly on point.  Consequently, the Court must look

again to the plain language of the statute.  *Ron Pair*, 489 U.S. at 241.

> The language allowing the exemption states:
>
> The interest of an individual under a retirement plan shall be exempt from
> creditor process to the extent provided under this section. The exemption
> provided by this section shall be available whether such individual has an
> interest in the retirement plan as a participant, beneficiary, contingent
> annuitant, alternate payee, or otherwise.

Va. Code Ann. § 34-34(B).  According to the plain language of the statute, the

exemption is only applicable to monies in a retirement plan to which an individual has

an interest.  As the evidence clearly shows, the debtor does not have an interest in the

overpayment deposited into her 401(k) account, as she had not earned the minimum

level of income in 2006 required to legally entitle her to it.  The Court notes,

importantly, that no allegation has been made that the debtor has done anything illegal,

fraudulent, nefarious, or even negligent to obtain possession of the overpayment; this

is simply a matter of a deposit made that was later to determined to be incorrect.   As a

result, the $2,462.37 overpayment should not be included in the debtor's IRA and does

become part of the estate.  Porter's objection to this exemption is sustained.


## IV. CONCLUSION

We have determined that the following resolution of the issues presented is

appropriate under the facts of this case and the law as applied to those facts:

1. The Debtor concedes that her exemption of "potential contingent and non-contingent interests in the estate of decedent" is not listed in her Homestead Deed and is therefore not exempt.  Porter's objection is **SUSTAINED**.

2. Porter's failed to meet his burden of proof regarding his objection to the debtor's exemption in $20,908.63 in wages; therefore the objection is **OVERRULED**.

3. Debtor's right to a portion of her ex-husband's future military retirement is not part of the bankruptcy estate and need not be exempted.  Porter's objection to this exemption is **OVERRULED**.

4. Porter met his burden of proof as to his objection to the debtor's exemption of the $2,462.37 overpayment in her IRA; therefore, the objection is **SUSTAINED**.

**IT IS SO ORDERED.**

Norfolk, Virginia

_____
DAVID H. ADAMS
United States Bankruptcy Judge

Copies to:
        John D. McIntyre, Esq.
        Kelly M. Barnhart, Esq.
        Donna Hall, Trustee
        Office of the U.S. Trustee